PRAWDZIK v. CITY OF GRAND RAPIDS.

1. Pleading—Allegations of Fact—Conclusions.

   In determining whether a declaration sets forth a cause of action, material allegations of fact properly pleaded therein must be accepted as true and construed in the light most favorable to plaintiff, mere conclusions of the pleader not being given force and effect.

2. Same—Conspiracy—Due Process—Damages—Revocation of License.

   In restaurateur's action against city, its mayor, city health officer and two city health department inspectors in which plaintiff charged conspiracy to destroy his business without due process of law, where analysis of pleadings shows that gist of the alleged cause of action lies in claim of unlawful revocation of license and damages claimed were those result-

ing from such revocation, the question for determination is
whether the license was lawfully revoked.

3. MUNICIPAL CORPORATIONS—ORDINANCES—REGULATION OF RESTAU-
RANTS.

Provisions of home-rule city's ordinance relative to regulation
of restaurants and other places where food and drinks are sold
for consumption on premises where sold were designed to pro-
tect the public health and to insure the proper cleansing and
sterilization of dishes and food containers and in general the
maintenance of sanitary conditions in the conduct of the busi-
ness.

4. SAME—REVOCATION OF RESTAURATEUR'S LICENSE.

Provisions of ordinance vesting power to revoke a restaurateur's
license after hearing upon written charges of which licensee
had a seven-day notice where he refused to comply with the
ordinance which also set up a definite standard, was unable
to do so, or was an habitual violator did not vest home-rule
city commission with arbitrary power as the procedure required
to be observed is such as to adequately protect rights of a
licensee.

5. SAME—STATUTES—CHARTER—PENALTY FOR VIOLATION OF ORDI-
NANCES.

Provisions of home-rule act and city charter, adopted pursuant
thereto, restricting penalty which may be provided for viola-
tion of any municipal ordinance have reference to possible
penalty imposable by a court following conviction on a charge
of violating the ordinance (1 Comp. Laws 1929, § 2228 *et seq.*,
as amended).

6. FOOD—LICENSES—INTENT OF ORDINANCE—SANITATION.

Intent of home-rule city ordinance licensing restaurants and
other places where food and drink were sold for consumption
on premises of licensee was to prevent issuance of license to
improper parties or carrying on of business under improper
conditions and to permit revocation of license for failure to
observe prescribed sanitary requirements.

7. SAME—LICENSES—DENIAL—REVOCATION—PUNISHMENT.

Since the denial of a license to operate a restaurant to an ap-
plicant therefor may not be regarded as in the nature of
punishment, the revocation of the license after it has been
granted, when done for the protection of the public, is also
not punishment within home-rule act and city charter restrict-
ing punishment to fine or imprisonment (1 Comp. Laws 1929,
§ 2228 *et seq.*, as amended).

8. CONSTITUTIONAL LAW—DUE PROCESS—POLICE POWER—REGULATION
OF BUSINESS—DISCRETION OF OFFICERS.

The conferring of discretionary power upon administrative boards
to grant or withhold permission to carry on a trade or business.
which is the proper subject of regulation within the police
power of the State is not violative of rights secured by the
due process clause (U. S. Const. Am. 14).

9. OFFICERS—DISCRETION—PRESUMPTIONS.

There is no presumption that discretionary power conferred upon
administrative officers will be arbitrarily exercised.

10. CONSTITUTIONAL LAW—DELEGATION OF POWERS—ADMINISTRATIVE
OFFICERS.

A statute which empowers an administrative officer in the exer-
cise of a reasonable discretion to withhold a license from such
persons as he may find unsuitable and in the exercise of a
similar discretion to revoke a license already granted to a per-
son who may be unfit, does not constitute delegation of a
legislative power.

11. LICENSES—CIVIL NATURE OF REVOCATION.

The revocation of a license to conduct a trade or business,
granted under the police power, is civil, not criminal, in
nature since the revocation is to protect the public and not
to punish the licensee.

12. MUNICIPAL CORPORATIONS—RESTAURANTS—NATURE OF POWER TO
GRANT OR REVOKE LICENSES.

Home-rule city ordinance empowering city commission to grant
and revoke licenses for operating restaurants and other places
for sale of food for consumption on the premises in accordance
with prescribed standards having reference to the public wel-
fare conferred neither legislative nor judicial power upon the
commission but at most quasi-judicial authority to determine
facts in accordance with which the provision of the ordinance
must be administered.

13. SAME—REGULATION OF RESTAURANTS—REVOCATION OF LICENSES.

City is empowered by home-rule act and charter adopted pur-
suant thereto to regulate restaurants and other public places
of like character and to revoke licenses if reasonably pertinent
to proper regulation (1 Comp. Laws 1929, § 2228 et seq., as
amended).

14. FOOD—RESTAURANT LICENSE—REVOCATION FOR VIOLATION OF
ORDINANCES AND REGULATIONS—AGREEMENT IN APPLICATION.

A license to operate a restaurant in a home-rule city is subject
to licensee's agreement to comply with food and beverage

ordinances and regulations pertaining thereto that were passed by the city commission where his application for license contains an express agreement to such effect, hence license could be revoked for his violation of such ordinances and regulations.

15. SAME—REVOCATION OF RESTAURANT LICENSE—PROCEDURE.

A home-rule city commission may not revoke the license of a restaurateur which it had theretofore issued pursuant to ordinance except on a specified showing after notice and hearing upon exact charges filed and upon finding that licensee either had refused to comply with the ordinance, was unable to do so, or was an habitual violator.

16. SAME—ORDINANCE—REVOCATION OF RESTAURANT LICENSE.

Provisions of home-rule city's ordinance relative to revocation of licenses to operate restaurants and other places for sale of food and drink for consumption on the premises of the licensee where he failed to comply with the ordinance, was unable to do so, or was an habitual violator were not invalid.

17. JUDGES—DISQUALIFICATION—MUNICIPAL    CORPORATIONS—SALARY ORDINANCE.

Claim that trial judge in superior court of home-rule city was disqualified from sitting in action by one whose license as restaurateur had been revoked, against home-rule city, its mayor, city health officer and two city health department inspectors because the defendant city was acting upon a salary ordinance which included the judge's salary *held*, without merit.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J.   Submitted October 4, 1945.   (Docket No. 30, Calendar No. 43,147.)   Decided January 7, 1946.   Rehearing denied March 5, 1946.

Case by John Prawdzik against City of Grand Rapids and certain city officers for damages caused by revocation of license to operate a restaurant. Motion to dismiss granted. Plaintiff appeals. Affirmed.

*Fred P. Geib,* for plaintiff.

*Ganson Taggart, Merle C. Baker* and *John F. Livingston,* for defendants.

CARR, J. Claiming that his license to conduct a restaurant business had been wrongfully and unlawfully revoked, plaintiff brought suit in the superior court of Grand Rapids to recover damages alleged to have resulted from such revocation and from the proceedings incident thereto. The individual defendants are, as appears from the declaration, the mayor of the city, the city health officer, and two inspectors of the municipal health department. Defendants moved to dismiss, asserting that the declaration did not allege facts sufficient to constitute a cause of action against any of the defendants; and further averring that the city cannot be held liable in damages because of the acts of its officers or agents performing duties in a governmental capacity, that the action of which plaintiff complained was done pursuant to law, that the plaintiff in accepting his license took it subject to the ordinance of the city and the power to revoke the same for cause, and that defendants had proceeded in accordance with the inherent police powers of the city. Following argument, the motion to dismiss was granted by the trial court. Thereafter a motion to vacate the order was made by plaintiff and denied. From the order granting the motion to dismiss, plaintiff appeals.

In determining whether the declaration sets forth a cause of action, material allegations of fact properly pleaded therein must be accepted as true and construed in the light most favorable to plaintiff. Mere conclusions of the pleader cannot be given force and effect. *Grevnin* v. *Collateral Liquidation, Inc.,* 302 Mich. 274; *Doyle* v. *Kammeraad,* 310 Mich. 233.

The declaration alleges that for a number of years prior to December 13, 1943, plaintiff had been con-

ducting a restaurant business in the city of Grand
Rapids at specified locations, that his operations
were successful financially and that he had estab-
lished a good reputation as a restaurateur; that he
was licensed by defendant city for the year begin-
ning May 1, 1943, and ending May 1, 1944, and that
on the date mentioned, December 13, 1943, the de-
fendant city, by action of its commission and with
the aid of the individual defendants, revoked said
license. Plaintiff further claims that as a result of
such revocation he was forced to abandon the res-
taurant business and dispose of property used in
connection therewith, thereby sustaining financial
loss.   It is further claimed that "said actions and
doings of said defendants were done and committed
in pursuance of a wicked and unlawful plan and con-
spiracy wholly to ruin, defame and destroy plain-
tiff's   restaurant   business   and   plaintiff's   good
reputation without due process of law and against
the just and lawful rights of plaintiff and to his
great loss and damage."   While the language quoted
suggests reliance on the theory of conspiracy it is
apparent from an analysis of the pleading that the
gist of plaintiff's alleged cause of action lies in the
claim that defendants had no right or power to re-
voke the license or to institute proceedings for such
revocation and that, in consequence, the action in
this regard was "without due process of law."   It
will also be noted that the damages that plaintiff
seeks to recover are claimed to have resulted not
from any plan or concerted agreement as between
the defendants but rather from the revocation of the
license by the city commission.   The question pre-
sented for determination is, in consequence, whether
the commission acted in accordance with its lawful
authority in revoking plaintiff's license.   Counsel

for plaintiff apparently concedes the correctness of this view for, in his brief, he states the issues involved on this appeal as follows:

"1. Was plaintiff's restaurant license unlawfully revoked?

"2. Did the unlawful revocation of plaintiff's restaurant license vest in plaintiff a right of action for damages against defendants or some of them?

"3. Was the trial judge disqualified to decide the case because during its pendency the defendant city was acting upon a salary ordinance which included the judge's salary?"

Likewise, in his reply brief, counsel, after referring to the home rule act and the city charter, states his position in the following language:

"Appellant contends that section 9 of the ordinance in question, insofar as it attempts to authorize revocation of a license for alleged violation of the ordinance, imposes punishment prohibited by the cited statute and by the Grand Rapids city charter; and is therefore null and void, and cannot justify or protect defendants or any of them in revoking his license, forcing him out of business and ruining his reputation as a first-class restaurateur."

This brings us to consideration of the ordinance under which the commission acted in revoking the license, which ordinance defendants relied on before the trial court on the hearing of the motion to dismiss. In its present form the ordinance was enacted in December, 1936, and is entitled:

"An ordinance relative to public health and to regulate restaurants, hotels, lunch counters, lunch wagons, soda fountains, and any other place where foods, drinks or other beverages are sold for consumption on the premises where sold; to prevent the sale of unclean foods, drinks or beverages, and to repeal all ordinances inconsistent herewith."

In accordance with the general purpose as suggested in the title, namely, the protection of the public health, provisions in the ordinance are designed to insure the proper cleansing and sterilization of dishes and food containers and in general the maintenance of sanitary conditions in the conduct of the business. Requirements are also imposed with reference to lighting and ventilation, the furnishing of running water and the disposal of garbage. It is specifically declared to be unlawful for one operating any restaurant or other place of business subject to the ordinance to keep, furnish or sell any unwholesome, tainted, putrid, or spoiled foods or beverages of any kind. To the end that the requirements of the ordinance may be properly enforced the health officer and his assistants are authorized to enter places of business subject to such requirements and to make inspections.

Section 9, which contains the provisions directly involved in this case, reads as follows:

"Sec. 9. No place or business named in section 1 hereof shall be operated and maintained except a license for the same shall first be secured and fees paid by the proprietor, as is now provided by ordinance. Provided, that any such license shall be denied to the applicant unless the place of business also complies with the provisions of this ordinance, and provided further, any such license may also be revoked by the city commission for violations of this ordinance upon the recommendation of the director of public welfare made in writing, and after giving a seven-day written notice to the licensee, either in person or by mail, and a hearing on the charges preferred. Such recommendation to revoke a license shall be accompanied with the exact charges against the licensee, and no license shall be revoked unless it be found that the licensee has refused or is unable to comply with the terms of this

ordinance or is an habitual violator thereof. Where it is necessary, in order to conform to the provisions of this ordinance, to make substantial changes in the building itself or rooms thereof, failure to complete the same until May 1, 1937, shall not constitute grounds for revoking the present license.''

Appellant does not claim that the ordinance is not, in general, a proper exercise of the police power of the city and reasonably necessary and conducive to the protection of the public health and well being. Neither does he question the right of the city to require a license as a condition precedent to conducting a restaurant business within the city. Obviously, he cannot question the validity of the license that he now says the city commission wrongfully revoked. The claim of invalidity is, in consequence, directed wholly against the provisions of section 9, above quoted, relating to revocation. With reference thereto it will be noted that the ordinance does not undertake to vest the commission, in acting on a petition for revocation, with arbitrary power. A definite standard is prescribed and the procedure required to be observed is such as to adequately protect the rights of a licensee.

The principal basis of attack on the validity of the provisions of the ordinance, to which appellant objects, rests on the assumption that the revocation of a license by the city commission is by way of punishment for a violation of the provisions of the ordinance. It is contended that the home rule act[*] and likewise the city charter, adopted pursuant to the statute, restrict the penalty that may be provided for the violation of any municipal ordinance to imprisonment for not more than 90 days or by fine not

[*] See 1 Comp. Laws 1929, § 2228 *et seq.*, as amended (Comp. Laws Supp. 1940, 1943, § 2231 *et seq.*, Stat. Ann. and Stat. Ann. 1943 Cum. Supp. § 5.2071 *et seq.*).—REPORTER.

exceeding $500. These limitations, however, have reference to the possible penalty that the court may be authorized to impose following a conviction on a charge of violating an ordinance.

Section 11 of the ordinance here involved covers the matter of punishment following a court conviction. That section has no connection with the provisions of section 9, relating to revocation of licenses. Such power is exercised by the commission on the same basis as is the licensing authority vested in it, that is, for the protection of the public health. Obviously, it was the intention of the legislative body of the city in the enactment of this ordinance to prevent the issuance of licenses to improper parties and to prevent the carrying on of business under improper conditions. It was, also, the intention, as evidenced by the provisions with reference to revocation, that if any licensee indicated by the manner in which he conducted his business and by failure to observe the sanitary requirements prescribed by the ordinance that he could not, with safety to the public health and well being, be permitted to continue, then the license to conduct the business should be taken away. Certainly, the denial of a license to an applicant may not be regarded as in the nature of punishment; and by the same process of reasoning the revocation of the license, after it has been granted, when done for the protection of the public, is subject to the same interpretation.

An interesting discussion of this question is found in the decision of the New York court of appeals in *Mandel* v. *Board of Regents,* 250 N. Y. 173, 176, 178 (164 N. E. 895), where it was said:

"Denial or revocation of a license because of guilt of an offense which tends to show moral or intellectual unfitness does not constitute punishment for the offense. (*Hawker* v. *New York,* 170 U. S. 189

[18 Sup. Ct. 573, 42 L. Ed. 1002].) It is only a measure of protection of the public. Decisions of the supreme court of the United States leave 'no doubt  * * * that the conferring of discretionary power upon administrative boards to grant or withhold permission to carry on a trade or business which is the proper subject of regulation within the police power of the State is not violative of rights secured by the Fourteenth Amendment.' (*People, ex rel. Lieberman,* v. *Van De Carr,* 199 U. S. 552 [26 Sup. Ct. 144, 50 L. Ed. 305], affirming 175 N. Y. 440 [67 N. E. 913, 108 Am. St. Rep. 781].) In that case the statute, which the courts held valid, gave to the board of health power to grant, withhold or revoke a permit to sell milk. No limitation was in terms placed upon the exercise of such power. Impliedly the power was subject to the limitation that it might not be exercised arbitrarily. 'There is no presumption that the power will be arbitrarily exercised.'

"Unquestionably the practice of pharmacy is subject to regulation by the State; unquestionably for centuries legislative bodies have been accustomed to empower administrative boards or officers to select the persons who shall be permitted to practice a vocation which is subject to regulation by the State. The selection may not be arbitrary. Grant or revocation of a license must rest upon reasonable grounds, but exercise of discretion in connection with an act performed customarily by administrative officers does not change an administrative act into a legislative act. A statute which empowers an administrative officer in the exercise of a reasonable discretion to withhold a license from such persons as he may find unsuitable and in the exercise of a similar discretion to revoke a license already granted to a person who may be unfit, does not constitute delegation of a legislative power. (*People, ex rel. Lieberman,* v. *Van De Carr, supra.*)

"We find no logical basis for distinction between such statutes and the statute now under considera-

tion. Perhaps the legislature might have conferred upon the regents a power to revoke the license without any limitation upon the exercise of that power except the implied limitation that they shall not exercise the power arbitrarily. Here the legislature has not attempted to confer power without express restriction. It has determined that only unfitness or incompetence shall be ground for revocation of a license which has been obtained without fraud or misrepresentation. The board of regents may act upon no other ground. Specific acts of wrong may, as here, permit the inference that a person is unfit or incompetent. The regents may give to such acts their logical probative force. They may in proper case find that such acts have caused or demonstrated unfitness. They may not, under the express terms of the statute, give to specific acts of wrong other effect. They may not either define or punish an offense; they may only protect the public against demonstrated unfitness or incompetency arising from any cause. That power the legislature might vest in an administrative board or officer. (*State, ex rel. Chapman,* v. *State Board of Medical Examiners,* 34 Minn. 387 [26 N. W. 123]; *Meffert* v. *State Board of Medical Registration and Examination,* 66 Kan. 710 [72 Pac. 247, 1 L. R. A. (N. S.) 811]; *State, ex rel. McAnally,* v. *Goodier,* 195 Mo. 551 [93 S. W. 928]; *People, ex rel. State Board of Health,* v. *Apfelbaum,* 251 Ill. 18 [95 N. E. 995])."

In *Hawker* v. *New York,* 170 U. S. 189, 200 (18 Sup. Ct. 573, 42 L. Ed. 1002), the court after a discussion of prior decisions made the following significant comment:

"The thought which runs through these cases, and others of similar import which might be cited, is that such legislation is not to be regarded as a mere imposition of additional penalty, but as prescribing the qualifications for the duties to be discharged and

the position to be filled, and naming what is deemed to be and what is in fact appropriate evidence of such qualifications.''

In *Prichard* v. *Battle,* 178 Va. 455, 462 (17 S. E. [2d] 393), it was held that the revocation of an automobile driver's license following a conviction on a charge of leaving the scene of an accident in violation of the State statute was not part of the penalty for the criminal offense. In holding that a pardon did not restore or revive the revoked license it was .said:

''The revocation is no part of the punishment fixed by the jury or by the court wherein the offender is tried. *Commonwealth* v. *Ellett,* 174 Va. 403, 411 (4 S. E. [2d] 762, 765). Nor is .it, in our opinion, an added punishment for the offense committed. It is civil and not criminal in its nature. *Commonwealth* v. *Funk,* 323 Pa. 390 (186 Atl. 65, 69, 70); *Steele* v. *State Road Commission,* 116 W. Va. 227 (179 S. E. 810).

''The question as to whether the revocation of a license because of an act for which the licensee has been convicted or because of the conviction itself is an added punishment has frequently been before the courts. The universal holding is that such a revocation is not an added punishment, but is a finding that by reason of the commission of the act or the conviction of the licensee, the latter is no longer a fit person to hold and enjoy the privilege which the State had theretofore granted·to him under its police power. The authorities agree that the purpose of the revocation is to protect the public and not to punish the licensee.

''In *Davis* v. *Commonwealth,* 75 Va. 944, 946, this court held that the revocation of a license to sell intoxicating liquors because of an offense for which the licensee had been convicted was not a punishment for the offense, but was simply the withdrawal

of the privilege which the State had granted the licensee to carry on a legitimate business. See, also, *Cherry* v. *Commonwealth,* 78 Va. 375.

"In *Hawker* v. *New York,* 170 U. S. 189 (18 Sup. Ct. 573 [42 L. Ed. 1002]), it was held that the denial or revocation of a license to practice medicine to one who had been convicted of a felony was not added punishment for the offense. See, also, *Mandel* v. *Board of Regents,* 250 N. Y. 173 (164 N. E. 895, 896).

"In *State* v. *Harris,* 50 Minn. 128 (52 N. W. 387, 388, 531), in holding that the revocation of a liquor license was not a punishment for the offense committed, the court said: 'While the revocation by the court follows the conviction as a consequence of the violation of the ordinance, it has no more the purpose or effect of punishment than if the license were revoked by the mayor or city council, neither of whom would have the power to impose punishment for the offense. There is a plain distinction between such a withdrawal of a special privilege which has been abused, the termination of a mere license, and the penalty which the law imposes as a punishment for crime.'

"The courts have uniformly held that the purpose of a disbarment proceeding is not to punish the offending attorney but to protect the public and to remove from the rolls of the court one who has been proved to be unfit to exercise the privilege granted to him. *Norfolk & Portsmouth Bar Ass'n* v. *Drewry,* 161 Va. 833, 837 (172 S. E. 282); and authorities there cited; *People, ex rel. Karlin,* v. *Culkin,* 248 N. Y. 465 (162 N. E. 487, 489 [60 A. L. R. 851]) (opinion by Cardozo, J.).

"The same reasoning applies to the revocation of a license to operate a motor vehicle. Its purpose is not to punish the offender but to remove from the highways an operator who is a potential danger to other users.

"The precise question was recently before the highest court of Kentucky in *Commonwealth* v. *Harris,* 278 Ky. 218 (128 S. W. [2d] 579), in which it was held that suspension of the driving license of one convicted of operating an automobile while intoxicated is not a part of the penalty for such offense, nor added punishment, but is merely the forfeiture of a conditional temporary permit for the licensee's failure to observe the conditions under which the license was issued. See, also, *People* v. *O'Rourke,* 124 Cal. App. 752 (13 Pac. [2d] 989, 992)."

Counsel for appellant cites and relies on *State* v. *Borough of Washington,* 44 N. J. Law, 605 (43 Am. Rep. 402), and *Greater New York Athletic Club* v. *Wurster,* 19 Misc. 443 (43 N. Y. Supp. 703). In the New Jersey case, however, the provision for revocation was a part of the penal clause of the ordinance, thus indicating intent that it was prescribed expressly by way of punishment. In the New York case the revocation of a license to operate a theater was attempted to be made by the mayor without hearing and without express provision therefor in the ordinance. Neither case may be construed as supporting the claim that the revocation of plaintiff's license in the case at bar was by way of punishment for a violation of the provisions of the ordinance of the defendant city.

It is further argued on behalf of the appellant that the ordinance in question undertakes to vest the city commission with judicial powers; and that the revocation of his license to conduct a restaurant violated his constitutional rights. Neither claim is well founded. The ordinance prescribes the standard that must be observed in granting a license and likewise in revoking a license. In each instance the test imposed has reference to the public welfare. At most, the authority of the commission in either in-

stance is merely quasi-judicial and involves the determination of facts in accordance with which the provision of the ordinance must be administered. It has been repeatedly held, in this State and elsewhere, that functions of this character are not, in the proper sense of the terms, either legislative or judicial.

The power of the legislative body of the city of Grand Rapids to regulate restaurants and other public places of like character is not open to question. The provisions of the home-rule act, and of the charter adopted pursuant thereto, are explicit on this point. The provision for revocation of the license, if reasonably pertinent to proper regulation, is likewise not open to question. Counsel for defendants urge that it is requisite and proper for the effectual protection of the public, and with such contention we agree. Certainly, in the instant case, it would not be consistent to say that a license may be refused if the requirements of the ordinance are not met but if once granted it must be permitted to continue in force for the balance of the period covered by the license without reference to the manner in which the business is conducted. It may be noted in this connection that the application for the license ·granted to plaintiff contained an express agreement on his part to comply with "food and beverage ordinances and regulations pertaining thereto passed by the city commission." Plaintiff accepted the license subject to such undertaking on his part.

The right to provide by ordinance for the revocation or suspension of a license granted by a municipality under such ordinance was recognized by this court in *People* v. *Riksen,* 284 Mich. 284, 290 (116 A. L. R. 116). The ordinance there in question related to hawkers and peddlers. In sustaining its validity, it was said:

"Under this ordinance the mayor may suspend a license for violation of a city ordinance, violation of the terms of the license or for undesirable business practices. A fair construction of this section of the ordinance indicates that the mayor may not arbitrarily suspend a license. The ordinance directs a standard for his guidance and conditions under which suspension may be accomplished. The only discretion the mayor has under the terms of this ordinance is to determine whether there has been a violation of the ordinance for any of the reasons mentioned."

Obviously, the same situation obtains in the case at bar. The commission may not revoke a license except on a specified showing after notice and hearing, with the further requirement that exact charges shall be filed. Nor may the license be revoked unless it is found that the licensee has refused to comply with the terms of the ordinance, or is unable to do so or is an habitual violator. See, also, *People* v. *Harley,* 230 Mich. 676. There is no claim in the declaration that appellant was not afforded the kind and character of hearing that the ordinance contemplates. Neither does it appear that he undertook to obtain a court review of the proceeding.

With reference to the reasonableness and validity of ordinance provisions for the revocation of licenses attention is called to the following cases: *People, ex rel. Lodes,* v. *Department of Health,* 189 N. Y. 187 (82 N. E. 187, 13 L. R. A. [N. S.] 894): *Wasserman.* v. *City of Kenosha,* 217 Wis. 223 (258 N. W. 857); *State, ex rel. Bluemound Amusement Park, Inc.,* v. *Mayor of Milwaukee,* 207 Wis. 199 (240 N. W. 847, 79 A. L. R. 281); *Chism* v. *City of Tulsa,* 192 Okla. 366 (136 Pac. [2d] 409).

It is our conclusion that the provisions of the ordinance of defendant city, under which appellant's license was revoked, are not invalid.

It follows that the basis on which plaintiff in his declaration predicates his right to recover damages is not tenable. In view of the conclusion reached in this regard it is unnecessary to consider the special defenses urged on behalf of defendant city, or to consider the question of liability on the part of any of the defendants on the hypothesis of the invalidity of the provisions of section 9 of the ordinance relating to revocation of licenses. The trial, court was correct in holding that the declaration does not state a cause of action against the defendants, or any of them.

The claim, that the trial judge was disqualified, first advanced in the motion to set aside the order of dismissal, is without merit.

The order appealed from is affirmed, with costs to the defendants.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.