STATE ex rel. WHITE, Relator,

v.

BILLINGS et al., Respondents.

2006-Ohio-4743.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2005 CVH 1328.

Decided Aug. 10, 2006.

78

Anthony Brock, Clermont County Assistant Prosecuting Attorney, for relator.

David A. Singleton, for respondents.

---

ROBERT P. RINGLAND, Judge.

{¶ 1} Two issues await resolution in this case. First, one of the respondents filed a motion to dismiss on February 15, 2006. The relator filed a memorandum in opposition on April 20, 2006, and a reply was filed on May 24, 2006. Second, a trial to the court was held on May 30, 2006, on the relator's right to relief on its complaint. The relator filed a posttrial memorandum on June 13, 2006, and the respondent, on July 11, 2006. The court took the matter under advisement and now renders the following decisions.

## I. MOTION TO DISMISS OLIVIA BILLINGS

{¶ 2} Olivia Billings argues that the complaint fails to state a claim as to her and moves that the complaint be dismissed pursuant to Civ.R. 12(B)(6).

## A. FACTS

{¶ 3} The relator, the state of Ohio, filed a complaint for injunctive relief under R.C. 2950.031. The state sought an order enjoining the respondent Garland Billings ("Billings") from residing in the home he shares with his wife, Olivia Billings. It further sought an injunction preventing Olivia Billings from allowing Billings to reside there. The portions of the complaint relevant to the state's claim against Olivia Billings read as follows:

1. * * * Garland Billings, is a person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to either a sexually oriented offense that is not a registration-exempt sexually oriented offense or a child-victim oriented offense who has established residency or occupied a residential premises within 1,000 feet of a school premises.

2. [Billings] has established a residence or occupies residential premises at 130 Chapel Road, Amelia, Ohio, 45102, Clermont County, Ohio which is within 1,000 feet of the school premises known as Amelia Elementary School, 5 E. Main Street, Amelia, Ohio, 45102, located in Clermont County, Ohio.

* * *

4. * * * Olivia Billings is the owner of the residential premises located at 130 Chapel Road, Amelia, Ohio 45102 which allowed [Billings] to reside in the premises contrary to the provisions of 2950.031(A) of the Revised Code.

* * *

6. As of the filing of this Complaint, [Billings] continues to live in the residential premises and the Respondent, Olivia Billings continues to allow [Billings] to reside at the premises, all in violation of Section 2950.031(A). * * *

WHEREFORE, [the state] demands * * * that the Court issue an order enjoining [Olivia Billings] from allowing [Billings] or any other person contrary to Section 2950.031 from residing or occupying said premises * * *.

## B. LEGAL STANDARD

■ {¶ 4} In order for a complaint to be dismissed for failure to state a claim, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery."[1] Furthermore, in construing a complaint upon a motion to dismiss for failure to state a claim, a court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party.[2] "As long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss."[3]

## C. LEGAL ANALYSIS

■ {¶ 5} Olivia Billings argues that the complaint fails to state a claim as to her and moves that the complaint be dismissed pursuant to Civ.R. 12(B)(6). The complaint alleges that Olivia Billings is acting in violation of R.C. 2950.031(A) by allowing Billings to reside at the 130 Chapel Road premises. R.C. 2950.031(A) provides:

No person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to either a sexually oriented offense that is not a registration-exempt sexually oriented offense or a child-victim oriented offense shall establish a residence or occupy residential premises within one thousand feet of any school premises.

{¶ 6} The statute is wholly concerned with individuals who have been convicted of sexually oriented offenses. There is no prohibition within it concerning persons who have not been convicted of sexually oriented offenses. It is therefore clear that there is no set of facts, consistent with the complaint, that would entitle the state to the relief it seeks against Olivia Billings.

---

1. Civ.R. 12(B)(6); *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus.

2. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.

3. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144–145, 573 N.E.2d 1063.

{¶ 7} The state argues that Billings is a necessary party whose joinder is appropriate under Civ.R. 19(A). That rule concerns parties to be joined if feasible and provides:

> A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subroger, or subrogee.

The state failed to explain under which provision of the rule Olivia Billings may be considered a necessary party to this action. The state similarly failed to point to any authority to support its proposition. The court finds nothing in the rule or in Ohio decisional law that supports the state's position.

{¶ 8} Because R.C. 2950.031 deals entirely with remedies that may be had against sex offenders who live within 1,000 feet of a school, complete relief may be afforded in an action against Billings only. Olivia Billings claims no interest relating to the subject of this action, and there is no allegation that Olivia Billings has any interest in this action by way of assignment or subrogation. Olivia Billings is therefore not a necessary party to this action and need not be joined under Civ.R. 19(A).

{¶ 9} Olivia Billings's motion is well taken and is granted.

## II. THE STATE'S RIGHT TO INJUNCTIVE RELIEF UNDER R.C. 2950.031

{¶ 10} At trial, the parties presented evidence by way of stipulation, oral testimony, and exhibits. The state's evidence focused on its right to injunctive relief while Billings's presentation focused on whether R.C. 2950.031 is unconstitutional. In his answer, Billings asserted that the statute violates seven separate constitutional principles. In his posthearing brief, he pursues only two constitutional arguments, the Ex Post Facto Clause of the United States Constitution and the Retroactivity Clause of the Ohio Constitution. He also urges that the statute should not be applied to him for equitable reasons. The court will therefore address only those three defenses and deems the defenses asserted in the answer but not pursued at trial or in Billings's brief waived.[4]

---

4. *Nationwide Mut. Fire Ins. Co. v. Logan,* 12th Dist. No. CA 2005–07–206, 2006-Ohio-2512, 2006 WL 1381685.

## A. STIPULATED FACTS

{¶ 11} Billings was convicted of the rape of an adult female on July 22, 1991, in Hamilton County, Ohio. The conviction is a sexually oriented offense that is not a registration-exempt sexually oriented offense, and Billings is registered as a sexually oriented offender. Billings has completed parole for this offense.

{¶ 12} Since April 2005, Billings has registered his address as 130 Chapel Road, Amelia, Clermont County, Ohio, a residential premises owned by his wife. Billings currently resides in and occupies the 130 Chapel Road premises, which is within 1,000 feet of Amelia Elementary School.

{¶ 13} Last, the parties stipulated to the names and addresses of 24 Clermont County sexual offenders who are deemed to be in violation of R.C. 2950.031. A list containing these names and addresses was compiled after the Clermont County Prosecutor's Office began enforcing R.C. 2950.031. The information in the list was incorporated into evidence presented by Billings.

## B. EVIDENCE ADDUCED AT TRIAL

{¶ 14} The state called one witness, Detective Lori Saylor of the Clermont County Sheriff's Department. She testified that she handles sex-offender registration for Clermont County and investigates offenders who appear to be noncompliant with the registration requirements. She testified that Billings was convicted of rape in Hamilton County and was adjudicated a sexually oriented offender there in 2001. In mid–2005, Saylor determined that Billings's residence at the 130 Chapel Road premises was within 1,000 feet of a school premises and was therefore in violation of R.C. 2950.031. She sent Billings a letter informing him that he was to relocate within 60 days. When Billings did not relocate, Saylor informed the assistant prosecuting attorney, who brought this action.

{¶ 15} Billings called Amelia Orr, the executive director of the Community Counseling and Crisis Center. Orr testified about her educational and professional background, and her curriculum vitae was introduced into evidence. The prosecuting attorney conducted a voir dire of Orr, after which the court ruled that she qualified as an expert in the assessment and treatment of sexual abusers under Evid.R. 702.

{¶ 16} Orr testified that in her opinion, based on her review of relevant studies and literature, a law prohibiting sex offenders from residing within 1,000 feet of a school is an ineffective way to reduce recidivism. She testified that she held this opinion because she has found no evidence that residency near schools has anything to do with recidivism. In fact, Orr testified about studies that have shown that offenders often commit sexual offenses outside of the general area of their residence. Orr also opined that R.C. 2950.031's residency requirement

could be counterproductive because it could cause stress in the offender, which often leads to recidivism. She testified that a statute prohibiting residence within 1,000 feet of a school creates a false sense of security in the community, which can also be counterproductive. According to Orr, R.C. 2950.031 improperly focuses on preventing sex offenses committed by strangers, since only five to ten percent of child sex offenses are committed by strangers. She opined that the statute was overly restrictive because persons subject to such laws often become homeless, fail to comply with reporting requirements, and become geographically isolated from employment and education.

{¶ 17} However, Orr did concede that access and opportunity are important factors to be considered in evaluating one's risk for recidivism and that it is rational to try to keep sex offenders away from children. She also agreed that one who has committed a sex offense in the past is more likely to commit another sex offense than someone who has never committed a sex offense. According to one study cited by Orr, a past sex offender is four times more likely to commit a future sex offense than one who has never committed such an offense. Orr further testified that recidivism is extremely difficult to measure because of under reporting.

{¶ 18} The final witness to testify was Timothy Shawn Burgener, a Master's Degree candidate at Ohio State University in city and regional planning, who specializes in environmental planning and GIS, a computer system for managing data typically displayed on maps. Burgener created maps reflecting the population density of children in Clermont County based on United States Census data. The maps also reflect 1,000-foot buffer zones around schools, in order to compare how many children reside within the buffer zones to the number who reside outside of the buffer zones. Burgener found that 12.3 percent of children in Clermont County live within buffer zones and 87.7 percent live outside of them. Burgener further testified about sex offenders whose names appear on the list of sex offenders stipulated to by the parties. He created a map reflecting the population density of children in 12 of these offenders' former residences and compared them with the population density of children in their current residences. Seven of the offenders relocated to areas with a higher population density of children, with an average increase of 4.1 children per acre. Five moved into areas with a lesser child-population density, for an average change of 1.79 children per acre. The net effect of these moves, according to Burgener, was an increase of 1.64 children per acre at the new residences.

{¶ 19} On cross-examination, Burgener stated that his data reflects the residences of school children. He testified that he would expect that all the children who are enrolled in school would be within the buffer zones during school hours, unless they were excused or home-schooled.

## C.  CONSTITUTIONALITY OF R.C. 2950.031

{¶ 20} Saylor's testimony and the stipulated facts establish that Billings is in violation of the statute.  The state is therefore entitled to the injunction it seeks against Billings unless he establishes that R.C. 2950.031 is unconstitutional.

### 1.  Legal Standard

{¶ 21} In analyzing the constitutionality of a statute duly enacted by the General Assembly, it is important to note that statutes enjoy a strong presumption of constitutionality.  "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." [5]  "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality." [6]  "That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution." [7]  Accordingly, there exists a strong presumption that R.C. 2950.031 is constitutional.

### 2.  Legal Analysis

{¶ 22} R.C. 2950.031 became effective on July 31, 2003.  As stated, division (A) prohibits certain persons who have been convicted of a sexually oriented offense that is not a registration-exempt sexually oriented offense from occupying a residential premises situated within 1,000 feet of any school premises.  Division (B) grants to the prosecuting attorney a cause of action for injunction against any person who violates division (A).

### a.  The Ex Post Facto Clause of the United States Constitution

{¶ 23} Billings first argues that R.C. 2950.031 is an unconstitutional ex post facto law because it imposes retroactive punishment on those who committed a sex offense prior to the act's effective date.  States are prohibited from enacting laws that increase punishment for criminal acts after they have been

---

5.  *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

6.  Id. at 147, 57 O.O. 134, 128 N.E.2d 59.

7.  *Xenia v. Schmidt* (1920), 101 Ohio St. 437, 130 N.E. 24, paragraph two of the syllabus; *State ex rel. Durbin v. Smith* (1921), 102 Ohio St. 591, 600, 133 N.E. 457; *Dickman,* 164 Ohio St. at 147, 57 O.O. 134, 128 N.E.2d 59.

committed.[8] In order to determine whether the statute violates the *Ex Post Facto* clause, it must first be ascertained whether the legislature meant the statute to impose punishment or to establish civil proceedings.[9] If the intention of the legislature was to impose punishment, the law is necessarily punitive and the inquiry is ended.[10] If the intention was to enact a regulatory scheme that is civil and nonpunitive, the statutory scheme must be further examined in order to determine whether it is " ' "so punitive either in purpose or effect to negate [the State's] intention" to deem it "civil." ' "[11] "[O]nly the clearest proof" will transform what the legislature has denominated a civil regulatory measure into a criminal penalty.[12]

{¶ 24} On its face, R.C. 2950.031 does not impose a criminal sanction. Rather, it creates a right to bring a civil action for injunctive relief against a sex offender. It is codified in Chapter 2950, which creates a registration system the expressed intent of which is to protect the safety and general welfare of the public.[13] The General Assembly specifically found that sex offenders pose a risk of engaging in further sexually abusive behavior even after being released from imprisonment and that protection of the public from such offenders is a paramount governmental interest.[14] The intent to protect the public from sex offenders has been historically regarded as a legitimate nonpunitive governmental objective.[15] R.C. Title 29 also contains other, traditionally civil provisions, including procedures for postconviction relief[16] and the protection of victims' rights.[17] Therefore, R.C.

---

**8.** Section 10, Article I, United States Constitution; *Calder v. Bull* (1798), 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648.

**9.** *Kansas v. Hendricks* (1997), 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501.

**10.** *Smith v. Doe* (2003), 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164.

**11.** Id., quoting *Hendricks*, 521 U.S. at 361, 117 S.Ct. 2072, 138 L.Ed.2d 501, quoting *United States v. Ward* (1980), 448 U.S. 242, 248–249, 100 S.Ct. 2636, 65 L.Ed.2d 742.

**12.** Id., citing *Hudson v. United States* (1997), 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450.

**13.** See R.C. 2950.02.

**14.** Id. at division (A)(2).

**15.** *Smith v. Doe*, 538 U.S. at 93, 123 S.Ct. 1140, 155 L.Ed.2d 164.

**16.** See R.C. Chapter 2953; *Coston v. Petro* (S.D.Ohio 2005), 398 F.Supp.2d 878, 884 (although the *Coston* court addressed the ex post facto analysis in the context of legal standing, the court's inquiry concerned whether R.C. 2950.031 was punitive or regulatory, the same question before the court in the case at bar).

**17.** See R.C. Chapter 2930.

2950.031 is intended to protect the safety and general welfare of Ohio's citizens and is regulatory and nonpunitive.

{¶ 25} Next, it must be determined whether R.C. 2950.031 is so punitive in purpose or effect to negate the nonpunitive intent. Although neither exhaustive nor dispositive, the following five factors have been identified as particularly relevant to this inquiry: whether the law has been regarded in our history and traditions as a punishment; whether it imposes an affirmative disability or restraint; whether it promotes the traditional aims of punishment; whether it has a rational connection to a nonpunitive purpose, and whether it is excessive with regard to that purpose.[18]

{¶ 26} Regarding the historical classification of R.C. 2950.031, the relative novelty of residency requirements for sex offenders suggests that they do not involve a traditional means of punishing.[19] The statute is unlike the traditional punishment of banishment, because sex offenders are not expelled from the community or even prohibited from accessing areas near schools for employment or commercial activities.[20] Billings compares R.C. 2950.031's residency restriction to another traditional form of punishment, parole. Billings asserts that the effect of the statute is to put control over the former sex offender's residence in the hands of law enforcement and the courts. According to Billings, the fact that R.C. 2950.031 does not provide for individualized risk assessment of sex offenders makes its provisions more onerous than traditional parole. But the absence of a particularized risk assessment does not necessarily convert a regulatory law into a punitive measure, for "[t]he *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences."[21] Moreover, unlike parole, R.C. 2950.031 does not subject a registered sex offender "to a series of mandatory conditions."[22] Sex offenders subject to the statute are free to choose where they live, with certain limitations, and even those who reside in areas within 1,000 feet of a school do not face criminal sanctions for violation of the statute as would a parolee who violates the conditions of his release. In contrast to traditional

---

18. *Smith v. Doe*, 538 U.S. at 97, 123 S.Ct. 1140, 155 L.Ed.2d 164 (discussing factors enumerated in *Kennedy v. Mendoza–Martinez* (1963), 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644).

19. *Doe v. Miller* (C.A.8, 2005), 405 F.3d 700, 719–720, citing *Smith v. Doe*, 538 U.S. at 97, 123 S.Ct. 1140, 155 L.Ed.2d 164.

20. See *Coston v. Petro*, 398 F.Supp.2d 878, 885; *Doe v. Miller*, 405 F.3d at 719.

21. *Smith v. Doe*, 538 U.S. at 103, 123 S.Ct. 1140, 155 L.Ed.2d 164.

22. Id. at 101, 123 S.Ct. 1140, 155 L.Ed.2d 164.

parole, registered sex offenders are free to live and work with no supervision. The court is unconvinced that the limitation of areas where a registered sex offender may reside makes R.C. 2950.031 akin to parole or any other traditional form of punishment.

{¶ 27} With regard to whether the law promotes the traditional aims of punishment, Billings argues that it serves both as a deterrent and as retribution. According to Billings the R.C. 2950.031 is a deterrent because it conveys the message that those who commit sex offenses face eviction from their homes, and uncertainty about where they can live for the rest of their lives. This argument overstates the scope of the statute, which applies only to sex offenders who live within 1,000 feet of a school premises. It also ignores the stated purpose of sex-offender-classification statutes, to protect the safety and general welfare of the people of Ohio.[23] The statute does have some deterrent effect; it is aimed at reducing the likelihood of reoffense by limiting the offender's temptation and reducing the opportunity to commit a new crime. But the deterrent effect of R.C. 2950.031 pales in comparison to the criminal sanctions that a sexually oriented offender faces for reoffending.[24] Moreover, the United States Supreme Court has stated that this factor should not be overemphasized, as "any number of governmental programs might deter crime without imposing punishment."[25] To the extent R.C. 2950.031 has a deterrent effect, it is slight.

{¶ 28} As to retribution, Billings argues that the universal application of the statute to registered sex offenders, regardless of their individualized risk to reoffend, smacks of retribution and community outrage. However, the fact that sex offenders are grouped into broad categories does not render a statute retributive if the categories are "reasonably related to the danger of recidivism" in a way that is "consistent with regulatory objective."[26] Here, the regulatory objective is to protect children, a most vulnerable segment of the population, from the risk posed by sex offenders as a group. In light of the finding by the general assembly that sex offenders pose a risk of engaging in further sexually abusive behavior even after being released,[27] the statute is reasonably related to the danger or recidivism in a way that is consistent with the regulatory objective. In sum, although the statute has some retributive and deterrent effect, these elements are not so pronounced as to render the statute punitive.

---

23. See R.C. 2950.02.

24. See, generally, *State v. Cook* (1998), 83 Ohio St.3d 404, 420, 700 N.E.2d 570.

25. *Smith v. Doe*, 538 U.S. at 102, 123 S.Ct. 1140, 155 L.Ed.2d 164.

26. Id.

27. R.C. 2950.02(A)(2).

{¶ 29} Next, the court must determine whether the statute imposes an affirmative disability or restraint. The statute precludes registered sex offenders from living within certain areas of the state, and thus clearly imposes a degree of restraint. However, the statute does not impose physical restraints on sex offenders and is less restrictive than the involuntary commitment provisions for mentally ill sex offenders held to be nonpunitive by the United States Supreme Court in *Kansas v. Hendricks*.[28] There, the court found that even a statute that imposes extremely restrictive and disabling conditions upon those who are committed does not necessarily impose punishment if it bears a reasonable relation to a legitimate nonpunitive objective.[29] The court finds that R.C. 2950.031 does impose an affirmative restraint, but that this factor must be viewed in light of the statute's relation to its nonpunitive purpose, the next factor to be considered in the analysis.[30]

{¶ 30} Whether the statute has a rational connection to a nonpunitive purpose is the "most significant factor" in the ex post facto analysis.[31] A "statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance."[32] There can be little doubt that R.C. 2950.031 has a purpose other than punishing sex offenders. The United States Supreme Court and the Ohio General Assembly have recognized the high rate of recidivism posed by sex offenders and the statute reasonably could be expected to decrease the risk of sex offenses against minors.[33]

{¶ 31} Billings argues that Bergener's testimony establishes that children live everywhere and also established that enforcement of the statute can result in a registered sex offender moving from an area in which relatively few children reside into one more densely populated with children. However, on cross-examination, Bergener admitted that his data reflected only the population density of children who reside within the 1,000–foot buffer zones and conceded that he would expect that the population density of children in the buffer zones during school hours would be considerably higher, consisting of all the enrolled students in the county. Thus, it is extremely likely that the highest concentra-

28. *Kansas v. Hendricks* (1997), 521 U.S. 346, 363–365, 117 S.Ct. 2072, 138 L.Ed.2d 501.

29. Id. at 363, 117 S.Ct. 2072, 138 L.Ed.2d 501.

30. See *Doe v. Miller*, 405 F.3d at 721 (discussing interplay of affirmative restraint factor and rational connection factor of ex post facto analysis).

31. *Smith v. Doe*, 538 U.S. at 102, 123 S.Ct. 1140, 155 L.Ed.2d 164.

32. Id. at 103, 123 S.Ct. 1140, 155 L.Ed.2d 164.

33. See id.; R.C. 2950.02(A)(2).

tions of school children to be found anywhere in the state will be found within the buffer zones during school hours, notwithstanding the fact that a majority of children reside outside of the buffer zones. The General Assembly's regulation of residency near school premises thus focuses on the areas where the highest concentration of children can be found, a regulation that strikes the court as reasonable. While R.C. 2950.031 may not reflect a "close or perfect fit" to its nonpunitive purpose, it is rationally connected thereto.

{¶ 32} Billings also claims that the statute is excessive with regard to its nonpunitive purpose because it treats all registered sex offenders uniformly. As stated earlier, the absence of a particularized risk assessment does not necessarily convert a regulatory law into a punitive measure.[34] Restrictions on other classes of offenders, including laws requiring the registration of sex offenders, have been found nonpunitive despite the absence of particularized determinations.[35] Nor is R.C. 2950.031 excessive because it does not contain a grandfather clause. The uncodified law accompanying the statute states that it applies to rental agreements entered into on or after the effective date of the act. An exception to the residency requirement would fly in the face of purpose for which it was enacted, to protect the public, and especially school children, from the risk of reoffense by registered sex offenders. Billings also asserts that the statute is excessive because it applies throughout a registered sex offender's lifetime. As the Supreme Court has noted, empirical research on child molesters indicates that most reoffenses do not occur within the first several years after release and many occur as late as 20 years after release.[36] "The excessiveness inquiry * * * is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." [37] In light of the risk posed by sexual offenders, the lifelong restraint is reasonable and not excessive.

{¶ 33} In sum, the General Assembly has the authority and is better suited to make judgments about the best means to protect the health and welfare of its

34. Id., citing *Smith v. Doe*, 538 U.S. at 103, 123 S.Ct. 1140, 155 L.Ed.2d 164.

35. See id., citing *Hawker v. New York* (1898), 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (law prohibiting convicted felons from practicing medicine); *De Veau v. Braisted* (1960), 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (plurality opinion) (law prohibiting convicted felons from serving as officers or agents of a union).

36. *Smith v. Doe*, 538 U.S. at 104, 123 S.Ct. 1140, 155 L.Ed.2d 164, citing National Institute of Justice, R. Prentky, R. Knight & A. Lee, U.S. Dept. of Justice, Child Sexual Molestation: Research Issues 14 (1997).

37. Id. at 105, 123 S.Ct. 1140, 155 L.Ed.2d 164.

citizens. That R.C. 2950.031 does not perfectly or completely rectify the ill it seeks to remedy is not fatal, especially when the legislation concerns an area in which precise statistical data is unavailable, and human behavior is necessarily unpredictable.[38] The court finds that Billings has failed to produce "the clearest proof" that R.C. 2950.031 is punitive.

### b. The Retroactivity Clause of the Ohio Constitution

{¶ 34} Billings contends that R.C. 2950.031 is unconstitutional under the Ohio Constitution as a retroactive law. Under the Ohio Constitution, the general assembly has no power to pass retroactive laws.[39] In order to determine if a law violates this provision, a court must employ a two-part inquiry and determine (1) whether the general assembly intended statute to be applied retroactively, and if it did, (2) whether the law is substantive or remedial.[40]

{¶ 35} Statutes are presumed to apply only prospectively unless specifically made retroactive.[41] R.C. 2950.031 applies to all registered sex offenders, regardless of when the offense was committed. Consequently, the court finds that the statute is intended by the legislature to apply retroactively. The issue therefore becomes whether R.C. 2950.031 is substantive or remedial.

{¶ 36} "Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective or retroactive."[42] A statute is "substantive" if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligation, or liabilities as to a past transaction, or creates a new right.[43] Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right.[44] A

---

38. *Doe v. Miller*, 405 F.3d at 714.

39. Section 28, Article II, Ohio Constitution.

40. *State v. Cook*, 83 Ohio St.3d at 410, 700 N.E.2d 570.

41. R.C. 1.48.

42. *Van Fossen v. Babcock Wilcox Co.* (1988), 36 Ohio St.3d 100, 106, 522 N.E.2d 489, quoting *Cincinnati v. Seasongood* (1889), 46 Ohio St. 296, 303, 21 N.E. 630.

43. Id. at 107, 522 N.E.2d 489.

44. Id.

purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively.[45]

██ {¶ 37} In *State ex rel. Matz v. Brown,* the Ohio Supreme Court held that a later enactment does not attach a new disability to a past transaction unless the past transaction "created at least a reasonable expectation of finality."[46] Further, "except with regard to constitutional protections against *ex post facto* laws * * * felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation."[47] Therefore, a felon whose conduct subjects him to later regulation does not suffer a new disability or restraint because a felon has no reasonable expectation of finality in his prior conduct. Central to the court's holding in *Matz* were public policy concerns, which it illustrated with an example. The court stated that a person convicted of abusing children could be prohibited from school employment by a later law. Later, R.C. 3319.39(B) was enacted, prohibiting schools from hiring those previously convicted of certain criminal offenses.[48] Another similar example was provided by the Ohio Supreme Court in *State v. Cook,* where the court found that the retroactivity clause would not conflict with a statute prohibiting persons convicted of certain violent crimes from acquiring, having, carrying, or using any firearm or dangerous ordnance.[49] The court finds these examples analogous to R.C. 2950.031 in their use of past events to establish current status.[50] In *State v. Cook,* the Ohio Supreme Court found that the registration requirements of R.C. Chapter 2950 were necessary to achieve the goals of the Chapter and were therefore remedial in nature. The court finds the residency requirements of R.C. 2950.031 are similarly necessary and therefore remedial. As a purely remedial statute, it does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively.[51]

### D. THE EQUITIES

██ {¶ 38} Last, Billings argues that the equities of his case demand that the state's request for an injunction be denied. This argument asks that this court

45. See id.

46. *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 281–282, 525 N.E.2d 805.

47. Id.

48. See *State v. Cook* (1998), 83 Ohio St.3d 404, 412, 700 N.E.2d 570.

49. Id. (discussing R.C. 2923.13(A)(2) and (B)).

50. Id.

51. *Van Fossen,* 36 Ohio St.3d at 107, 522 N.E.2d 489.

make an individualized finding in Billings's case and determine that he poses no threat to the children at Amelia Elementary School. As discussed previously, R.C. 2950.031 does not provide for such an individualized analysis. The court, having found no constitutional flaw with R.C. 2950.031, is now bound to apply it as intended by the legislature. Under the statute, the equities of a respondent's individual case are irrelevant to the right of a county prosecutor to injunctive relief, and the court will not consider them.

## III. CONCLUSION

{¶ 39} For the reasons stated, the court finds Olivia Billings's motion well taken. The complaint, so far as it relates to Olivia Billings, is dismissed. Counsel for the respondents is ordered to submit an appropriate entry. The court finds further that R.C. 2950.031 is not in conflict with the Ohio or United States Constitutions. The state has established that it is entitled to an order enjoining Billings from residing in the 130 Chapel Road premises. The state is ordered to submit an appropriate judgment entry and injunction order.

So ordered.